Capnoni, V.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   6/2/2015
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    -against-<br><br><br>RIVERBAY CORPORATION,<br><br>                  Defendant. | ECF CASE<br><br>**CONSENT DECREE**<br><br>15 Civ. 4180 (VEC) |

## INTRODUCTION

### A.    Background

This Consent Decree is entered into between the United States of America (the "United States") and Defendant Riverbay Corporation ("Defendant" or "Riverbay").

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619.  Specifically, the United States' complaint in this Action, filed on June 1, 2015, alleges that the Defendant maintains and employs an overly burdensome and intrusive policy governing waivers to its "no pets" rule, which has deterred and prevented persons with disabilities from obtaining reasonable accommodations; and that Riverbay has used this policy to unlawfully deny accommodation requests of persons with disabilities, and has engaged in a pattern or practice of hostile activity toward persons with disabilities who request accommodations from its "no pets" rule;

### B.    Riverbay

WHEREAS, Riverbay, located in the Bronx, New York, and commonly referred to as

"Co-op City," is the owner and operator of the largest affordable housing cooperative in the United States, with approximately 15,372 residential units and 60,000 residents;

**C.      Riverbay's No Pets Policy**

WHEREAS, at all times relevant to the Complaint, Riverbay's standard occupancy agreement, established with the approval of the State of New York upon the Corporation's formation in 1965 contained a provision prohibiting "dogs or other animals of any kind" from being kept on Riverbay's premises;

WHEREAS, until December 2011, when Riverbay amended its policy and application governing reasonable accommodations, Riverbay's application for requesting a reasonable accommodation to its no pets rule ("Policy I") consisted of five forms (including one to be completed in blue ink and one to be typewritten), prohibited certain breeds of dogs, required animals to be neutered or spayed, imposed annual renewal requirements, and required the applicant to provide his or her medical records;

WHEREAS, in addition to completing this application process, Riverbay often required individuals seeking a reasonable accommodation to Riverbay's no pets rule to attend an interview with Riverbay agents.

**D.      Riverbay's Amended Policy**

WHEREAS, in December 2011, Riverbay amended its reasonable accommodation policy ("Policy II"), but left in place many of the provisions discussed above, including the provisions prohibiting certain breeds of dogs altogether and requiring that assistance animals be neutered or spayed;

2

WHEREAS, Policy II also prohibited "[d]ogs weighing more than 20 pounds . . . unless there is a demonstrated medical need for a larger animal" or unless the animal is trained to perform a particular task requiring the animal to weigh more than 20 pounds;

WHEREAS, in July 2014, Riverbay again amended its reasonable accommodation policy ("Policy III"), but left in place some of the provisions in Policies I and II, including a prohibition against certain breeds of animals, a prohibition which Riverbay could waive based only on an applicant's undefined "medical need";

E.     **Prior Proceedings**

WHEREAS, between 1995 and 2014, the Secretary of the United States Department of Housing and Urban Development ("HUD"), the New York State Division of Housing and Community Renewal, and the New York City Commission on Human Rights have received and investigated multiple complaints concerning Riverbay's practices concerning reasonable accommodation requests.  HUD has issued three separate charges of discrimination against Riverbay and participated in two administrative hearings before an administrative law judge ("ALJ") concerning Riverbay's reasonable accommodation policy; in each proceeding, the ALJ determined that Riverbay had violated the FHA;

WHEREAS, between January 1, 2005, and November 1, 2011, Riverbay denied 28 out of 42 requests for reasonable accommodations to its no pets rule, and another two individuals did not complete the application process;

F.     **Consent of the Parties to Entry of this Decree**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o) and § 3614(a). The

parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, Riverbay agrees to make modifications to its reasonable accommodation policy and provide other relief as set forth herein; and

WHEREAS, the parties agree to the entry of this Consent Decree.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

### I. GENERAL INJUNCTION

1.     Defendant and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with it, are enjoined from discriminating on the basis of disability as prohibited by the FHA.  Specifically, Defendant and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with it, shall not:

    a. discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a disability of the buyer or renter, in violation of 42 U.S.C. § 3604(f)(1)(A);

    b. discriminate in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

    c. fail or refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling, as required by 42 U.S.C. § 3604(f)(3)(B);

    d.  coerce, intimidate, threaten, or interfere with any person in the exercise or

enjoyment of, or on account of any person having exercised or enjoyed, or on

account of any person having aided or encouraged any other person in the

exercise or enjoyment of, any right granted or protected by Section 3604 of the

FHA, in violation of 42 U.S.C. § 3617.

## II.  MODIFICATION OF REASONABLE ACCOMODATION POLICY

2.      As soon as reasonably possible, but no later than fifteen (15) days after the entry

of this Consent Decree, Riverbay shall adopt and implement the reasonable accommodation

policy for receiving and handling requests for reasonable accommodations made by individuals

with disabilities, entitled "Riverbay Reasonable Accommodation Policy," as attached hereto in

Appendix A.

3.      Riverbay shall provide notice and documentation to the United States within

fifteen (15) days of adoption and implementation of the Riverbay Reasonable Accommodation

Policy.

4.      After adopting the Riverbay Reasonable Accommodation Policy, Riverbay shall

not make any substantive revisions to the policy without prior approval from the United States.

The United States' approval of proposed substantive revisions will not be unreasonably withheld.

## III.  PAYMENTS TO AGGRIEVED PERSONS

5.      Within thirty (30) days after entry of this Consent Decree, Defendant shall deposit

in an interest-bearing account the aggregate sum of THREE HUNDRED THOUSAND

DOLLARS ($300,000) for the purpose of compensating any aggrieved persons who may have

suffered as a result of the Defendant's discriminatory housing practices with respect to service or

assistance animals. This deposited money, plus any accrued interest, shall be referred to as the "Initial Settlement Fund."

6.    No later than fifteen (15) days after the entry of this Consent Decree, the Defendant shall publish the Notice to Persons Who May Have Suffered from Housing Discrimination at Riverbay Corporation (Co-op City) ("Notice") at Appendix B informing readers of the availability of compensatory funds. The Notice shall be no smaller than three (3) columns by six (6) inches and shall be published on three (3) occasions in *The Co-op City Times*; one time in *The New York Times* at a size of two (2) inches by six (6) inches; and two (2) times in *The Daily News* and *The New York Post* at a size of three (3) inches by six (6) inches. The three publication dates in *The Co-Op City Times* shall be separated from one another by twenty-one (21) days. Within ten (10) days after the last publication date, Riverbay shall provide the newspapers containing the Notice to the United States.

7.    No later than fifteen (15) days after entry of this Consent Decree, the Defendant shall place on www.riverbaycorp.com a link to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF"). The link should state "Notice to Persons Who May Have Suffered from Housing Discrimination at Riverbay (Co-op City)," and should appear on the upper half of the website, in a conspicuous font style and color. The link to the Notice shall remain on the website for the duration of the Claim Period set forth in Paragraph 11.

8.    No later than fifteen (15) days after the entry of this Consent Decree, the Defendant shall send a copy of the Notice to each of the following organizations:

Brooklyn Center for Independence of the Disabled
27 Smith Street, Suite 200
Brooklyn, New York  11201;

Bronx Independent Living Services
4419 Third Avenue, Suite 2C
Bronx, New York  10457;

Center for Independence of the Disabled, NY
841 Broadway, #301
New York, New York  10003;

Disability Rights Advocates
1560 Broadway, 10th Floor
New York, New York  10036;

Fair Housing Justice Center
5 Hanover Square, 17th Floor
New York, New York 10004;

Harlem Independent Living Center
289 St. Nicholas Avenue, Suite 21, Lower Level
New York, New York  10027; and

United Spinal Association
75-20 Astoria Blvd.
Jackson Heights, New York  11370.

9.     The United States may make its own efforts to locate and provide notice to

potential aggrieved persons.

10.     Defendant shall permit the United States, upon reasonable notice, to review any

non-privileged records that may reasonably facilitate its investigations to locate allegedly

aggrieved persons and make determinations regarding their potential claims.  In addition,

Defendant shall identify to the United States any allegedly aggrieved persons or any past,

present, or prospective tenants of Riverbay who have household members with disabilities or

regular guests with disabilities, to the extent that the Defendant, or its employees or agents,

currently possesses the information required to make such identifications.

11.     Claimants shall have a period of one hundred twenty (120) days from the date of this Consent Order in which to assert claims of discrimination; such time may be extended only with the written consent of the Defendant.  Claims will be considered timely if fully submitted within the 120-day period.  Claims will be considered filed when they are received by the United States, unless mailed or sent by overnight delivery, in which case they will be considered filed on the postmark date or date of mailing.

12.     The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person.  The United States will inform the Defendant in writing of each of its determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  If the United States determines that the Initial Settlement Fund is insufficient to compensate the aggrieved persons at Riverbay, the United States shall be entitled to make determinations that award aggrieved persons, in the aggregate, a total amount exceeding the amount in the Initial Settlement Fund, but not exceeding SIX HUNDRED THOUSAND DOLLARS ($600,000), plus any accrued interest, to be paid by Defendant.

13.     If the Defendant disputes the amount of or entitlement to a payment to an aggrieved person, the Defendant shall, within fifteen (15) days after receiving notice of a determination (a "Determination") from the United States, provide a written objection to the United States, along with any information or documents that it believes may refute the aggrieved person's claim.  The parties may agree to extend the Defendant's time to object to any Determination for good cause shown.  The United States shall give due consideration to any

objections it receives from the Defendant and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to the Defendant, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid.  If the Defendant disputes the Reconsidered Determination, the Defendant may file an objection with the Court, to which the United States may respond, and the Court may sustain or overrule the objection.

15.     The Defendant shall deliver to the United States checks payable to aggrieved persons in the amounts identified by the United States (or as directed by the Court, as applicable) within:

a.  thirty (30) days after receiving a Determination to which no objection has been made;

b.  fifteen (15) days after receiving a Reconsidered Determination to which no objection has been filed with the Court; or

c.  fifteen (15) days after any decision by the Court overruling a filed objection or issuing an order to award the aggrieved persons a total amount exceeding the amount of the Initial Settlement Fund.

The above time periods shall, at the request of Riverbay, be extended for an additional thirty (30) day period for any payments required to be made in excess of the initial compensation fund. In no event shall the aggregate of all such checks exceed the amount of six hundred thousand dollars ($600,000), plus any accrued interest.  No aggrieved person shall be paid until he/she has executed and delivered to the United States, with a copy to Riverbay, the release at Appendix C.

16.     No adverse action shall be taken against any person because such person

9

cooperates with the United States in its investigations, makes a claim, seeks to make a claim, or assists another person in making a claim under Section III of this Consent Decree.   A maintenance increase or a special assessment applicable to all shareholders shall not be deemed to be an adverse action, even if one of the purposes for said maintenance increase or special assessment is to fund the compensation fund.

17.    In the event that less than the total amount in the Initial Settlement Fund including accrued interest is distributed to aggrieved persons, then, no later than the earlier of (a) when the United States determines that no further aggrieved persons will be identified, or (b) the expiration of this Consent Decree, any remainder in the Initial Settlement Fund shall be distributed to a qualified non-profit organization(s) mutually agreed upon by the United States and the Defendant, subject to the approval of the Court, for the purpose of conducting fair housing enforcement-related activities in New York City, or for the purpose of enforcing fair housing accommodations for persons with disabilities within New York City.  Before selecting the qualified organization(s), Defendant will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purposes, submit such proposal to the United States, and consult with and receive no objection from the United States.  The United States and Defendant may request modification of the proposal before approving the organization(s). The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s).  Defendant shall also require that the qualified organization(s) receiving funds submit to Defendant and the United States a detailed report on how the funds are utilized within one (1) year of receipt of funds, and every year thereafter until the funds are exhausted.

[THIS PAGE INTENTIONALLY LEFT BLANK]

## IV.  CIVIL PENALTY

18.     Within thirty (30) days after the date of the entry of this Consent Decree, the

Defendant shall pay an initial civil penalty of TWENTY FIVE THOUSAND DOLLARS

($25,000) pursuant to 42 U.S.C. § 3614(d)(1)(C).  If monies remain in the Initial Settlement

Fund ("Remainder") pursuant to Paragraph 5, supra, Defendant shall pay an additional civil

penalty from the remainder of TWENTY FIVE THOUSAND DOLLARS ($25,000) or, if the

Remainder is less than $25,000, such lesser amount.  Said sums shall be paid by electronic funds

transfer, pursuant to instructions to be provided by the Department of Justice, Civil Rights

Division, Housing & Civil Enforcement Section.

## V.  EDUCATIONAL PROGRAM

19.     No later than thirty (30) days after the entry of this Consent Decree, the

Defendant shall provide a copy of this Consent Decree to all management employees,

department heads, and the staff of its sales and leasing offices.  Riverbay shall secure a signed

statement from each such agent or employee acknowledging that he or she has received the

Consent Decree, and has had an opportunity to read the Consent Decree and to have questions

about the Consent Decree answered.  This statement shall be substantially similar to the form of

Appendix D.

20.     During the term of this Consent Decree, Riverbay shall give each new

management employee, department head, and staff member of its sales and leasing offices, no

later than thirty (30) days after the date he or she commences such agency or employment

relationship with Riverbay, a copy of this Consent Decree.  Riverbay shall require each such new

agent or employee to sign a statement acknowledging that he or she has received the Consent

12

Decree, and has had an opportunity to read the Consent Decree and to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of <u>Appendix D</u>.

21.    In lieu of providing individuals or entities with copies of the Consent Decree as required by the preceding paragraphs of Part V, Riverbay may, with the United States' advance written approval of the form and content of any proposed summary, instead provide a summary of the Consent Decree designed to provide personnel with information relevant to their positions. Copies of the Consent Decree (or approved summary) may be provided electronically or by a link to a website where a copy of the Consent Decree (or approved summary) may be found.

22.    Riverbay shall establish, to the extent not already established, quarterly training for new employees or agents who receive, process, review or make determinations with regard to any reasonable accommodation request or who are involved in or responsible for enforcing any of Riverbay's rules or regulations.  Such quarterly trainings shall be conducted for the duration of this Consent Decree.

## VI. NOTICE OF RIVERBAY'S REASONABLE ACCOMMODATION POLICY

23.    No later than ten (10) days after the date of entry of this Consent Decree, Riverbay shall post and prominently display in the common areas of each building and the sales or rental offices of Riverbay a sign no smaller than ten (10) inches by fourteen (14) inches indicating that reasonable accommodations are available to persons with disabilities.

24.    Riverbay shall also post the Riverbay Reasonable Accommodation Policy on its website in a conspicuous location and accessible format.

25.     Riverbay shall, no later than ten (10) days after the adoption of the Riverbay Reasonable Accommodation Policy, print the first two (2) pages of the policy in *The Co-op City Times* and make copies of the complete Riverbay Reasonable Accommodation Policy available in its Cooperator Services Offices, Sales Offices, and Legal Office.  Within ten (10) days of this notification to residents, Riverbay shall provide written confirmation to United States that it has done so.

26.     For the duration of this Consent Decree, in all future advertising in newspapers and electronic media, and on pamphlets, brochures and other promotional literature regarding Riverbay, Riverbay shall place, in a conspicuous location, a statement that Riverbay provides reasonable accommodations to persons with disabilities, as required by the FHA.

27.     No later than one hundred eighty (180) days after the date of entry of this Consent Decree, Riverbay shall submit to the United States an initial report regarding the signed statements of its employees and agents as specified in Paragraphs 18 and 19 of this Consent Decree or a report of its compliance with Paragraph 20 of this Consent Decree.  Thereafter, during the term of this Consent Decree, Defendant shall, on or prior to the anniversary of the entry of this Consent Decree, submit to the United States a report regarding its compliance with Paragraphs 18, 19 and 20 of this Consent Decree, except that the last report shall be due on or before sixty (60) days prior to the anniversary.

28.     For the duration of this Consent Decree, Defendant shall provide the United States with a copy of any written administrative or judicial fair housing complaint against Riverbay or any of its officers, employees, agents, successors, or assigns, alleging unlawful disability discrimination under the FHA ("FHA Complaint"), and shall do so within ten (10)

14

days after receipt of any FHA Complaint. Upon reasonable notice, Defendant shall also provide the United States all non-confidential information it may request concerning any FHA Complaint. Within ten (10) days after the resolution of any FHA Complaint, Defendant shall provide counsel for the United States a copy of any document reflecting such resolution.

29.     For the term of this Consent Decree, Defendant is required to preserve all records related to this Consent Decree, including but not limited to all records relating to: (1) complaints against it or its agents or employees alleging discrimination in housing on the basis of disability; and (2) its receipt and processing of requests for reasonable accommodations. Upon reasonable notice to Defendant, representatives of the United States shall be permitted to inspect and copy any such records (with redactions to the extent required by law) of the Defendant or investigate any complaints bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Riverbay and Riverbay residents from such investigations.

30.     Riverbay must submit quarterly reports to the United States, providing the following information:

a.     A list of all persons, including contact information, who inquired about or applied for a reasonable accommodation, whether or not the request was an initial request or a request for a renewal of an accommodation;

b.     the type of reasonable accommodation sought;

c.     whether or not, in each instance the accommodation was sought and/or granted;

d.     the date of the request and the reviewer or reviewers or the decision

15

maker;

e.      if the request is denied, the reason for the denial; and

f.      whether a denied request was appealed and the outcome of the appeal,

including the rationale for the denial.

Provided that the information provided complies with the requirements of this Section, Riverbay

may supply the United States with the same report it provides to HUD under a separate Consent

Order in a matter entitled HUD *ex rel Archibald vs. Riverbay*.

### VII.  RESOLUTION, DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

31.      This Consent Decree shall remain in effect for five (5) years following entry of

this Consent Decree by the Court.  By consenting to entry of this Consent Decree, the parties

agree that in the event that Riverbay engages in any conduct occurring after entry of this Consent

Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a

"subsequent violation" by Riverbay pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

32.      The Complaint in this action is hereby dismissed as to Riverbay without prejudice

to reinstatement in accordance with the next paragraph.

33.      The United States shall be entitled to reinstate the Complaint in this Action at any

time during the duration of this Consent Decree if the Court determines that Riverbay has failed

to perform, in a timely manner, any act required by this Consent Decree or has otherwise failed

to act in conformance with any provision of this Consent Decree.

34.      The Court shall retain jurisdiction for the duration of this Consent Decree to

enforce the terms of the Consent Decree.  The United States may move the Court to extend the

duration of the Consent Decree in the interests of justice.  Riverbay reserves the right to object to

any such extension and to oppose any such motion.  The duration of the Consent Decree may also be extended by the mutual written agreement of the United States and the Defendant, and approval by the Court.

35.     The United States and Riverbay shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  However, in the event of a failure by the Defendant to perform, in a timely manner, any act required by this Consent Decree or otherwise for the Defendant's failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

36.     Upon the expiration of the Consent Decree, the Complaint in this action shall be dismissed with prejudice.

## VIII.  TIME FOR PERFORMANCE

37.     Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the Defendant.

## IX.  COSTS OF LITIGATION

38.   Each party to this litigation will bear its own costs and attorney's fees associated

with this litigation.

The undersigned apply for and consent to the entry of this Consent Decree:

*For the United States:*

VANITA GUPTA
Acting Assistant Attorney General
Civil Rights Division

PREET BHARARA
United States Attorney

By: _____

ELLEN BLAIN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No. (212) 637-2743
Fax No. (212) 637-2730
ellen.blain@usdoj.gov

*For Riverbay:*

By: _____

JEFFREY D. BUSS
SMITH BUSS & JACOBS LLP
733 Yonkers Avenue
Yonkers, NY 10704
Tel. (914) 476-0600
Fax. (914) 476-0614
jbuss@sbjlaw.com

*For Riverbay:*

By: _____

[INSERT NAME] *Noel Ellison*
Interim General Manager
Riverbay Corporation

SO ORDERED.

_____

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

Date: June 2, 2015

18

## APPENDIX A
## REASONABLE ACCOMMODATION POLICY

Riverbay is committed to granting reasonable accommodations to its rules, policies, practices, or services when such accommodations may be necessary to afford people with disabilities the equal opportunity to use and enjoy their dwellings, as required by federal, state and local law. A reasonable accommodation may include a change or exception to a rule or policy that is needed because of a person's disability, or it may be a physical change to a unit or common area. It is Riverbay's general policy to provide reasonable accommodations to individuals with disabilities whenever an individual has a disability and there is a disability-related need for the requested accommodation. A disability-related need for a requested accommodation exists when there is an identifiable relationship, or nexus, between the requested accommodation and the individual's disability.

Riverbay accepts reasonable accommodation requests from persons with disabilities and those acting on their behalf. Reasonable Accommodation Request forms are available in your local Cooperator Services Office, and may be returned to that office when complete. They will then be forwarded to the Reasonable Accommodation Coordinator. If you require assistance in completing the form, or wish to make the request orally, please contact the Reasonable Accommodation Coordinator at 718-320-3300, extension 3329. Riverbay will keep a record of all requests.

We will make a prompt decision on your request. If the request is of a time-sensitive nature, please let us know and we will expedite the decision-making process. In the event we need additional information to make a determination, we will promptly advise you of the information needed. It is Riverbay's policy to seek only the information needed to determine if a reasonable accommodation should be granted under federal, state or local law. We will not ask about the nature or extent of your disabilities. If we grant the request, you will receive a letter so indicating.

If we deny the request, we will provide you with a letter stating all of the reasons for our denial. If an individual with a disability believes that the request has been denied unlawfully or a response has been unreasonably delayed, then he or she may file a complaint by writing or calling any of the following:

| U.S. Department of Housing and Urban Development Office of Fair Housing and Equal Opportunity 26 Federal Plaza, Room 3532 New York, NY 10278-0068 1-800-496-4294 http://hud.gov/complaints | New York State Division of Human Rights One Fordham Plaza, 4th Floor Bronx, NY 10458 Tel No. (718) 741-8400 TDD: 1-718-741-8300 http://www.dhr.state.ny.us/ | New York City Commission on Human Rights 100 Gold Street, Suite 4600 New York, NY 10038 (212) 306-7450 http://www.nyc.gov/cchr |
|---|---|---|

## ASSISTANCE ANIMALS

One common type of reasonable accommodation is allowing a person with a disability to keep an assistance animal. An assistance animal is any animal that works, provides assistance, performs tasks for the benefit of a person with a disability, or provides emotional support that alleviates one or more identified symptoms or effects of a person's disability. Riverbay is committed to ensuring that individuals with disabilities may keep such animals in Co-op City to the extent required by federal, state and local law.

An animal that is trained to do work or perform tasks for an individual with a disability is known as a service animal. It is often readily apparent that an animal is trained to do work or perform tasks for the benefit of a person with a disability, such as a dog that guides an individual with a visual impairment. Where it is readily apparent that an animal is a trained service animal, for example, a dog trained to guide an individual with a visual impairment, Riverbay will not inquire about the individual's disability or the animal's training.

In the case of a resident who requests a reasonable accommodation for an assistance animal that provides emotional support or other assistance that ameliorates one or more symptoms or effects of the resident's disability, Riverbay may require a statement from a health or social service professional[1] indicating:

    i.  That the applicant has a disability, and
   ii.  That the animal would provide emotional support or other assistance that would ameliorate one or more symptoms or effects of the disability.

In the case of a resident who requests a reasonable accommodation for an assistance animal that does work or performs tasks for the benefit of a person with a disability, Riverbay may require that the resident provide:

    i.  A statement from a health or social service professional indicating that the person has a disability, and
   ii.  Information that the animal has been individually trained to do work or perform tasks that would ameliorate one or more symptoms or effects of the disability, or information that the animal, despite lack of individual training, is able to do work or perform tasks that would ameliorate one or more symptoms or effects of the disability.

If an assistance animal both provides emotional support or other assistance that ameliorates one or more effects of a disability and does work or performs tasks for the benefit of a person with a physical disability, Riverbay may require compliance with either of the two preceding paragraphs, but not both.

---

[1] "Health or social service professional" means a person who provides medical care, therapy or counseling to persons with disabilities, including, but not limited to, doctors, physician assistants, psychiatrists, psychologists, or social workers.

In order to minimize the effect on other shareholders, Riverbay prefers but does not require that emotional support animals have an adult weight of 25 pounds or less, that animals be spayed or neutered, and that applicants choose an emotional support animal that does not have an exceptionally strong bite strength.

FORM A: <u>APPLICATION FOR REASONABLE ACCOMMODATION</u>
COMPLETE THIS FORM IF YOU HAVE A DISABILITY AND WOULD LIKE
TO REQUEST AN ACCOMMODATION. IF YOU REQUIRE ASSISTANCE
COMPLETING THIS FORM, OR WISH TO MAKE THE REQUEST ORALLY,
PLEASE CONTACT THE REASONABLE ACCOMMODATION
COORDINATOR AT 718-320-3300, EXT. 3329.



SHAREHOLDER NAME: _____

ADDRESS:_____ TELEPHONE#: _____

PERSON REQUESTING ACCOMMODATION: _____

(IF DIFFERENT FROM SHAREHOLDER)
RELATIONSHIP TO SHAREHOLDER: _____

1.  Please describe the reasonable accommodation you are requesting:

2.  Please explain why this reasonable accommodation is needed.  You need not provide detailed
    information about the nature or severity of the disability.

3.  If you are requesting permission to have an assistance animal in your apartment, please complete
    the following:

    (a) Is it readily apparent that the assistance animal is a trained service animal (for example, an
    animal trained to assist you with a visual impairment or similar disability)?

    ____YES   _____NO

    (b) If your answer to 3(a) above was NO, please complete the following:

        i.  Type of animal: _____

        ii.  Is the animal required because of a disability? ____Yes _____No

        iii.  Does the animal perform work or do tasks for you
              because of your disability? _____Yes ____No

**IF THE ANIMAL PERFORMS WORK OR TASKS FOR YOU,
PLEASE PROVIDE THE FOLLOWING:**

    (1)  A statement from a health or social service professional indicating that you have a disability (*i.e.*, you have a physical or mental impairment that substantially limits one or more major life activities). You may use, but are not required to use, Form B.

    (2)  An explanation of how the animal has been trained to do work or perform tasks that ameliorate one or more symptoms or effects of your disability or, if the animal lacks individual training, how the animal is able to do work or perform tasks that ameliorate one or more symptoms or effects of your disability.

    (3)  Please submit a photograph of the animal after you have selected an animal.

**IF THE ANIMAL DOES NOT PERFORM WORK OR DO TASKS FOR YOU, BUT PROVIDES EMOTIONAL SUPPORT OR AMELIORATES ONE OR MORE EFFECTS OF YOUR DISABILTIY, PLEASE PROVIDE THE FOLLOWING:**

    (1)  A statement from a health or social service professional indicating: (a) that you have a disability; (b) the animal would provide emotional support or other assistance that would ameliorate one or more symptoms or effects of your disability; and (c) how the animal ameliorates the symptoms or effect(s). You may use, but are not required to use, Form B.

    (2)  Please submit a photograph of the animal after you have selected an animal.

4.    If the assistance animal is a dog or a cat, please provide copies of the rabies tag or certificate that is required by New York law. If you have not selected an animal at the time you complete this application, Riverbay may approve the application with the condition that, if you select a dog or a cat, you must submit copies of the rabies tag or certificate that is required by New York law, before the selected animal moves in.

5.    If you are requesting a different modification or accommodation, please describe it here:

_____Date:_____
                  Signature

## CO-OP CITY GUIDELINES REGARDING ASSISTANCE ANIMALS

A. Riverbay will consider reasonable accommodation requests consistent with the enclosed policy regarding disabilities that meet the definition set forth in any one of the following relevant statutes:

1. Federal: The Fair Housing Act defines a person with a "handicap" as one who: (a) has a physical or mental impairment which substantially limits one or more of such person's major life activities; or (b) has a record of having such an impairment; or (c) is regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. § 802).

2. State: The New York State Executive Law defines a disability as: (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment.

3. NYC: The New York City Administrative Code defines a disability as: (a) any physical, medical, mental or psychological impairment, or a history or record of such impairment. (b) The term "physical, medical, mental, or psychological impairment" means: (1) an impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or (2) a mental or psychological impairment.

B. Riverbay will review and respond promptly to all reasonable accommodation requests.

C. All information received by Riverbay Corporation regarding an individual's disability, including physical, mental, psychological, and/or psychiatric conditions, shall be kept confidential unless the individual authorizes the release of the information or Riverbay is required to produce the information in response to a Court order, on notice to the affected individual(s).

D. If the shareholder has a disability and a disability-related need for a reasonable accommodation under federal, state or local law, Riverbay will grant such accommodation, including a request to keep a service or assistance animal. Riverbay will not retaliate against any person because that individual has requested or received a reasonable accommodation. Riverbay will not discourage any individual from making a reasonable accommodation request, including a request to keep a service or assistance animal. While it is Riverbay's policy to not allow any pets at Coop City, service and assistance animals are not pets. However, a shareholder must request an exception to Riverbay's pet policy in order to keep an assistance animal at Coop City.

E. Riverbay may deny a request or require the removal of a particular assistance or service animal from the premises if the animal poses a direct threat (*i.e.*, a significant risk of substantial harm) to the health or safety of other individuals that cannot be eliminated or reduced to an acceptable level by another reasonable accommodation, considering the health and safety of the other individual(s) and the need for an accommodation, or if the animal would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation. Riverbay will base such determinations upon consideration of the behavior of the particular animal at issue, and not on speculation or fear about the types of harm or damage an animal may cause.

F. When assistance animals are in Riverbay's common or public areas, they must be kept on a leash or in a carrier or cage, unless those devices prevent service animals from performing a disability-related task. Additionally, like any other shareholder, owners of service or assistance animals remain subject to the provisions of their Occupancy Agreements, with the exception that they are allowed to occupy the premises with their service or assistance animals. Similarly, owners of service or assistance animals shall comply with all state and local animal laws, including but not limited to Section 1310 of the New York Public Health Code requiring animal owners to clean up animal waste, except when such laws are preempted by the Fair Housing Act, Section 504 of the Rehabilitation Act, or the Americans with Disabilities Act or the owner is entitled to a reasonable accommodation.

G. Riverbay may take action against the owner for noise or damages caused by a service or assistance animal to the same extent that it takes such action against shareholders who have caused similar noise or damages.

H. In any proceeding before the Cooperator Appeals Council, the Cooperator Appeals Council may not grant, deny or revoke a reasonable accommodation request, may not require removal of an assistance animal, may not condition an assistance animal's use, and shall not inquire into a cooperator's disability or need for an assistance animal.

## FORM B – Assistance Animal Requests: Health Care Professional Form

**SHAREHOLDER NAME:** _____

**ADDRESS:** _____

**TELEPHONE #:** _____

     I, _____(applicant name) intend to request that Riverbay Corporation permit me to keep an assistance animal as a reasonable accommodation for my disability. In connection with that application, I am requesting that you complete this form regarding my disability.

_____**Date:**_____

               **Applicant Signature**

**NAME OF APPLICANT:**_____

**RELATIONSHIP TO SHAREHOLDER:**_____

### TO BE COMPLETED BY HEALTH CARE PROFESSIONAL

**NAME:**

**ADDRESS:**

**TELEPHONE NUMBER:**

1. Does the individual identified above have a disability?

2. Does or would an assistance animal provide disability-related assistance to the individual? One example of assistance is alleviating one or more of the symptoms or effects of the disability.

3. For animals who do not perform work or do tasks for the individual, how would the animal ameliorate one or more of the symptoms or effects of the disability?

4.  If you would like to submit additional supporting materials, please provide them with this form.


NAME: _____

SIGNATURE: _____

TITLE: _____

DATE: _____

**APPENDIX B**

**NOTICE TO PERSONS WHO MAY HAVE SUFFERED FROM HOUSING DISCRIMINATION AT RIVERBAY CORPORATION (CO-OP CITY)**

On _____, the United States District Court for the Southern District of New York entered a consent decree resolving a lawsuit brought by the United States Department of Justice against Riverbay Corporation (Co-op City) alleging that it failed to provide reasonable accommodations to persons with disabilities who sought to keep an assistance animal at Riverbay, in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619.  An assistance animal is any animal that works, provides assistance, performs tasks for the benefit of a person with a disability, or provides emotional support that alleviates one or more identified symptoms or effects of a person's disability.

Under this consent decree, a person may be entitled to receive monetary relief if he or she was a resident of Riverbay, or associated with a resident of Riverbay, and was:

- PREVENTED OR DISCOURAGED FROM REQUESTING TO KEEP AN ASSISTANCE ANIMAL

- DENIED A REQUEST TO KEEP AN ASSISTANCE ANIMAL

- HARRASSED OR OTHERWISE INTERFERED WITH AFTER REQUESTING TO KEEP AN ASSISTANCE ANIMAL

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the United States Attorney's Office, Southern District of New York at 212-637-2800.  You may also fax us at 212-637-2702, contact us at http://www.justice.gov/usao/nys/civilrights.html, or write to:

United States Attorney's Office, Southern District of New York
Attn: Civil Rights Unit
86 Chambers Street
New York, New York 10007

NOTE: You must call or write no later than [120 days], 2015.

28

## APPENDIX C

## RELEASE FORM

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States of America v. Riverbay Corporation*, 15 Civ. _____ (__) (S.D.N.Y.), I hereby release the defendant named in this action, together with its agents, servants and employees, from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action and that occurred before the date of this release.

I fully acknowledge and agree that this release of the defendant shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)


_____
(Print name)


_____
(Date)

**APPENDIX D**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

I _____, am an employee of _____ and my duties include _____. I have received and read a copy of the Consent Decree in *United States of America v. Riverbay Corporation*, 15 Civ. _____ (__) (S.D.N.Y.), and have been given instruction on (1) the terms of this Consent Decree, (2) the requirements of the Fair Housing Act, particularly related to the Act's reasonable accommodation requirements, and (3) my responsibilities and obligations under the Consent Decree and the Fair Housing Act. I have had all of my questions concerning the Consent Decree answered to my satisfaction.

_____, 20___

_____
Employee Signature